UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| INSTITUTE FOR FREE SPEECH,<br><br>Plaintiff,<br><br>vs.<br><br>MARTY JACKLEY, IN HIS OFFICIAL CAPACITY AS SOUTH DAKOTA ATTORNEY GENERAL; AND SHANTEL KREBS, IN HER OFFICIAL CAPACITY AS SOUTH DAKOTA SECRETARY OF STATE,<br><br>Defendants. | 3:18-CV-03017-RAL<br><br><br>OPINION AND ORDER CONCERNING MOTION FOR INJUNCTIVE RELIEF |

Plaintiff Institute for Free Speech (IFS) on October 8, 2018, filed a verified complaint against South Dakota's Attorney General Marty Jackley (Jackley) and Secretary of State Shantel Krebs (Krebs) claiming that two South Dakota statutes violate IFS's rights under the First Amendment of the United States Constitution. Doc. 1. IFS seeks a declaration that its conduct is not regulable under these statutes and that the statutes are unconstitutional. IFS on October 9, 2018, moved for a temporary restraining order and a preliminary injunction enjoining South Dakota from enforcing the statutes against it. Doc. 4. This Court coordinated with counsel for IFS and the Defendants to schedule and hold a hearing on October 12, 2018, on IFS's request for injunctive relief. For the reasons explained below, this Court grants in part and denies in part the requested injunctive relief.

1

I.      **Facts**[1]

IFS is a 501(c)(3) nonpartisan, educational charity dedicated to the defense of the rights to free speech and press protected by the First Amendment. Doc. 1 at ¶ 12. To this end, IFS researches the constitutional and practical implications of federal and state compelled disclosure laws, particularly in the area of campaign finance regulation. Doc. 1 at ¶ 12. IFS claims that it intends to publish an analysis of two measures on South Dakota's 2018 general election ballot—proposed Constitutional Amendment W (Amendment W) and Initiated Measure 24 (IM 24). Doc. 1 at ¶ 2. IFS plans to publish the analysis on its own website and to send the analysis to South Dakota news outlets through a press release. Although absentee voting in South Dakota commenced on September 21, 2018, IFS has yet to complete its analysis of the two ballot measures and did not file this lawsuit until October 8, 2018. IFS explained at the hearing that the analysis should be ready for publication by October 17, 2018, and that it was unaware until very recently of Amendment W and IM 24.[2] According to IFS, the analysis will emphasize the ways in which the measures will impact citizens' First Amendment rights but will not urge passage or defeat of either measure. Doc. 1 at ¶ 2.

IFS is now suing Jackley and Krebs because it is concerned that the analysis will fall within South Dakota statutes regulating and compelling disclosures for an "independent communication expenditure." South Dakota law defines an independent communication expenditure as

> an expenditure, including the payment of money or exchange of other valuable consideration or promise, made by a person, entity, or political committee for a communication concerning a candidate or a ballot question which is not made to, controlled by, coordinated with, requested by, or made upon consultation with that candidate,

---

[1]This Court takes the facts from the verified complaint and the parties' representations during the hearing.
[2]Defendants at the hearing advised the Court that by early January of 2018 both Amendment W and IM 24 were certified for inclusion on the 2018 general election ballot in South Dakota.

political committee, or agent of a candidate or political committee. The term does not include administration and solicitation of any contribution for a political action committee established by an entity and associated expenses, nor the use of an entity's real or personal property located on its business premises for such purposes. The term does not include any communication by a person made in the regular course and scope of the person's business or ministry or any communication made by a membership organization solely to any member of the organization and the member's family[.]

SDCL § 12-27-1(11).[3]

Section 12-27-16 requires two types of disclosures for independent communication expenditures. First, § 12-27-16(1) requires that communications funded by independent communication expenditures include certain information. Specifically, § 12-27-16(1) states:

(1) Any person or entity that makes a payment or promise of payment totaling more than one hundred dollars, including donated goods or services for an independent communication expenditure that concerns a candidate, public office holder, ballot question, or political party shall append to or include in each communication a disclaimer that clearly and forthrightly:
(a) Identifies the person or entity making the independent communication expenditure for that communication;
(b) States the mailing address and website address, if applicable, of the person or entity; and
(c) If an independent expenditure is undertaken by an entity not including a candidate, public office holder, political party, or political committee, the following notation must be included: "Top Five Contributors," including a listing of the names of the five persons making the largest contributions in aggregate to the entity during the twelve months preceding that communication. An independent communication expenditure made by a person or entity shall include the following: "This communication is independently funded and not made in consultation with any candidate, public office holder, or political committee.".
A violation of this subdivision is a Class 2 misdemeanor. A subsequent offense within a calendar year is a Class 1 misdemeanor.

---

[3]SDCL §§ 12-27-1 and 12-27-16 are newly-enacted South Dakota statutes that became effective on July 1, 2018.

3

SDCL § 12-27-16(1). Second, § 12-27-16 requires that people or entities making independent communication expenditures file disclosures with the state:

> (2) Any person or entity making a payment or promise of payment of more than one hundred dollars, including donated goods and services, for a communication described in subdivision (1) shall file an independent communication expenditure statement within forty-eight hours of the time that the communication is disseminated, broadcast, or otherwise published;
>
> (3) The independent communication expenditure statements required by this section shall:
> (a) Identify the person or entity making the expenditure;
> (i) Including mailing address, city, and state of a person; or
> (ii) If an entity, the mailing address, city, and state, and website address if applicable; and
> (iii) Identify any expenditures made for communications described in subdivision (1) during the current calendar year but not yet reported on a prior statement, the name of each candidate, public office holder, ballot question, or political party mentioned or identified in each communication, the amount spent on each communication, and a description of the content of each communication; and
> (b) For an entity, the independent communication expenditure statement shall also include the name and title of the person filing the report, the name of its chief executive, if any, and the name of the person who authorized the expenditures on behalf of the entity;
>
> (4) For an entity whose majority ownership is owned by, controlled by, held for the benefit of, or comprised of twenty or fewer persons, partners, owners, trustees, beneficiaries, participants, members, or shareholders, the statement shall identify by name and mailing address each person, partner, owner, trustee, beneficiary, participant, shareholder, or member who owns, controls, or comprises ten percent or more of the entity;
>
> (5) An entity shall also provide statements, as defined in subdivision (3), for any of its partners, owners, trustees, beneficiaries, participants, members, or shareholders identified pursuant to subdivision (4) that are owned by, controlled by, held for the benefit of, or comprised of twenty or fewer persons, partners, owners, trustees, beneficiaries, participants, members, or shareholders, until no entity identified in the statements meets the ownership test set forth in subdivision (4).

4

SDCL § 12-27-16(2)–(5). The term "communication" in § 12-27-16 does not include:

> (a) Any news article, editorial endorsement, opinion or commentary writing, or letter to the editor printed in a newspaper, magazine, flyer, pamphlet, or other periodical not owned or controlled by a candidate or political committee;
> (b) Any editorial endorsement or opinion aired by a broadcast facility not owned or controlled by a candidate or political committee;
> (c) Any communication by a person[4] made in the regular course and scope of the person's business or ministry or any communication made by a membership entity solely to members of the entity and the members' families;
> (d) Any communication that refers to any candidate only as part of the popular name of a bill or statute; and
> (e) Any communication used for the purpose of polling if the poll question does not expressly advocate for or against a candidate, public office holder, ballot question, or political party.

SDCL § 12-27-16(6).

IFS argues that South Dakota's statutes requiring disclosure of certain information for an "independent communication expenditure" violate the First Amendment and are unconstitutionally vague. At the hearing, the Defendants opposed granting relief to IFS for various reasons, but explained that they do not intend to prosecute IFS or pursue any fines against it for publishing the analysis as described in IFS's verified complaint.

## II. Analysis

### A. Motion for Temporary Restraining Order

IFS sought a temporary restraining order based on its verified complaint. Under Rule 65(b) of the Federal Rules of Civil Procedure, a court "may issue a temporary restraining order without written or oral notice to the adverse party or its attorney" if there is a clear showing "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be

---

[4] The definition of "person" under § 12-27-1(16) means "a natural person," thereby excluding IFS.

heard in opposition" and the movant certifies to efforts to give notice to the opponent or explains why notice should not be required. Fed. R. Civ. P. 65(b). A temporary restraining order under Rule 65(b) is to prevent immediate and irreparable harm and typically to preserve the status quo until the Court can hear from both sides. Here, the Court scheduled the hearing so that both IFS and the Defendants could be heard and learned at the hearing that the earliest IFS intends to publish its analysis of Amendment W and IM 24 is October 17, 2018. Thus, Rule 65(a) concerning preliminary injunctions with "notice to the adverse party," rather than a temporary injunction without notice under Rule 65(b), more appropriately applies here. The motion for a temporary restraining order is denied.

### B. Preliminary Injunction Motion

IFS seeks a preliminary injunction to enjoin the Defendants from invoking SDCL § 12-27-16 to hold IFS criminally liable for its planned analysis of Amendment W and IM 24. The Defendants oppose entry of a preliminary injunction for several reasons: 1) § 12-27-16 does not apply to the analysis IFS proposes because of the exception under § 12-27-16(6)(a); 2) IFS created its own injury by waiting to file this lawsuit until October 8, 2018; 3) § 12-27-16 is constitutional and thus IFS is not likely to succeed on the merits; and 4) IFS has not made the showing necessary for a preliminary injunction to issue.

When addressing a motion for preliminary injunction, this Court considers the factors set forth in Dataphase Systems, Inc. v. C.L. Systems, Inc., 640 F.2d 109 (8th Cir. 1981) (en banc): "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." Id. at 113; see also Perfetti Van Melle USA, Inc. v. Midwest Processing, LLC, 135 F. Supp. 3d 1015, 1019 (D.S.D. 2015)

6

(applying Dataphase factors when considering a request for a preliminary injunction). When the movant seeks to enjoin implementation of a state statute, the movant "must demonstrate more than just a 'fair chance' that it will succeed on the merits." Planned Parenthood Minn., N.D., S.D. v. Rounds, 530 F.3d 724, 731–32 (8th Cir. 2008) (en banc). Thus, district courts considering a "duly enacted state statute," must "make a threshold finding that [the movant for preliminary injunctive relief] is likely to prevail on the merits." Id. at 732–33.

Before applying the Dataphase factors, this Court addresses the Defendants' first argument that § 12-27-16 does not apply to IFS's proposed publication of its analysis at all. Defendants' argument is based on § 12-27-16(6)(a), which excludes from the term "communication" and thus from statutory criminal liability "[a]ny news article, editorial endorsement, opinion or commentary writing, or letter to the editor printed in a newspaper, magazine, flyer, pamphlet, or other periodical not owned or controlled by a candidate or political committee." § 12-27-16(6)(a). Defendants suggest that there are two halves to § 12-27-16(6)(a) such that it could be read as exempting first "any news article, editorial endorsement, opinion or commentary writing" and second a "letter to the editor printed in a newspaper, magazine, flyer, pamphlet, or other periodical not owned or controlled by a candidate or political committee." Defendants' reading of § 12-27-16(6)(a) creates nonsense to the second half of the provision; while a "letter to the editor printed in a newspaper, magazine" makes sense, "a letter to the editor printed in . . . [a] flyer, pamphlet . . ." makes no sense. § 12-27-16(6)(a). "Nonsensical interpretations of . . . statutes[] are disfavored." FutureSource LLC v. Reuters Ltd., 312 F.3d 281, 284 (7th Cir. 2002). Section 12-27-16(6)(a) properly read in full exempts a "news article, editorial endorsement, opinion or commentary writing, or letter to the editor" when such writings are "printed in a newspaper, magazine, flyer, pamphlet, or other periodical not owned or controlled by a candidate or political committee." IFS

plans to publish what could be considered a "commentary writing" on its website with the hope that other sites might disseminate the analysis, as well as send its analysis by press release to South Dakota media outlets. Section 12-27-16(6)(a) is noticeably silent in protecting from criminal liability an "independent communication expenditure" on a website or electronic format or so transmitted to media outlets. Federal courts are "without power to adopt a narrowing construction of a state statute unless such a construction is reasonable and readily apparent." Sternberg v. Carhart, 530 U.S. 914, 944 (2000) (citation omitted). IFS has legitimate concern that § 12-27-16(6)(a) does not exempt its proposed commentary from § 12-27-16, and the interpretation proffered by the Defendants of § 12-27-16(6)(a) to exempt IFS's proposed commentary is not readily apparent and ultimately not reasonable.

The Defendants made known during the hearing that they had no intention to enforce § 12-27-16 on IFS if it proceeds with the analysis as IFS has described it. Defendants suggest that IFS thus lacks standing to challenge § 12-27-16. Defendants' position may have derived from a misreading of the media exception provision of § 12-27-16(6)(a). Regardless, Defendants' argument is the same one made and rejected in Vermont Right to Life Committee v. Sorrell, 221 F.3d 376 (2d Cir. 2000), where the Second Circuit reasoned:

> The State also argues that VRLC's fear of suit could not possibly be well-founded because the State has no intention of suing VRLC for its activities. While that may be so, there is nothing that prevents the State from changing its mind. It is not forever bound, by estoppel or otherwise, to the view of the law that it asserts in this litigation. *See Mitchell v. Washingtonville Cent. Sch. Dist.,* 190 F.3d 1, 6 (2d Cir.1999) (doctrine of "judicial estoppel" which prevents party from taking mutually exclusive positions in different litigation under some circumstances applies to assertions of factual positions); *Vittitow v. City of Upper Arlington,* 43 F.3d 1100, 1106 (6th Cir.) (there is no rule "that requires us to accept representations from [the prosecution's] counsel" (emphasis omitted)), *cert. denied,* 515 U.S. 1121, 115 S.Ct. 2276, 132 L.Ed.2d 280 (1995); *Kucharek v. Hanaway,* 902 F.2d 513, 519 (7th Cir.1990)

8

> (interpretation of statute offered by Attorney General is not binding because he may "change his mind ... and he may be replaced in office"). *But cf. Wisconsin Right to Life, Inc. v. Paradise,* 138 F.3d 1183, 1185 (7th Cir.) (finding no well-founded fear to support standing where present state attorney general, and every past attorney general since 1976, had adhered to same interpretation of statute), *cert. denied,* 525 U.S. 873, 119 S.Ct. 172, 142 L.Ed.2d 140 (1998). In light of this uncertainty, the State's representation cannot remove VRLC's reasonable fear that it will be subjected to penalties for its planned expressive activities. If we held otherwise, we would be placing VRLC's asserted First Amendment rights "at the sufferance of" Vermont's Attorney General. *North Carolina Right to Life, Inc. v. Bartlett,* 168 F.3d 705, 711 (4th Cir.1999), *cert. denied,* 528 U.S. 1153, 120 S.Ct. 1156, 145 L.Ed.2d 1069 (2000); *see also Stenberg v. Carhart,* 530 U.S. 914, 120 S.Ct. 2597, 2614–15, 147 L.Ed.2d 743 (2000). *American Booksellers,* 484 U.S. at 395, 108 S.Ct. 636 (1988) ( "[A]s the Attorney General does not bind the state courts or local law enforcement authorities, we are unable to accept her interpretation of the law as authoritative."); *North Carolina Right to Life, Inc.,* 168 F.3d at 710 (declining in absence of agency rule to rely on "State's litigation position" that it does not interpret statute to apply to issue advocacy). *But cf. Graham v. Butterworth,* 5 F.3d 496, 499 (11th Cir.1993) (dismissing First Amendment challenge to state statute as moot after defendants withdrew initial determination that plaintiffs' conduct violated statute and informed plaintiffs that their intended campaign conduct would not be prosecuted).

Vermont Right to Life Committee, 221 F.3d at 383–84. If this Court were to decline to consider this case based on the Defendants' representations, it "would be placing [IFS]'s asserted First Amendment rights at the sufferance of [South Dakota's] Attorney General." Id. at 383 (internal marks and citation omitted).

One more subject deserves attention before applying the Dataphase factors. Section 12-27-16 requires mandated disclosures when there is an "independent communication expenditure." The term "independent communication expenditure" is defined to mean "an expenditure, including the payment of money or exchange of other valuable consideration or promise." § 12-27-1(11). IFS's proposed commentary is to be a written analysis of Amendment W and IM 24 for posting

9

on IFS's website (and possibly picked up by other websites) and to be sent by press release to South Dakota media outlets. An "expenditure" means the action of spending funds or the amount of money spent. Webster's Ninth New Collegiate Dictionary 437 (1985). IFS already has employees and a website, so the writing and posting of the commentary to its existing website does not involve any expenditure, other than IFS's existing overhead. If IFS sends the analysis electronically to South Dakota media outlets or issues an electronic press release, there is no "expenditure" apparently incurred.[5] This is not the case of some entity spending money on newspaper, print, television, mailing, or radio advertising, directly or indirectly, which seems to be the thrust and concern of § 12-27-16. Thus, § 12-27-16 appears not to apply to IFS's proposed commentary, but not for the reason that the Defendants asserted. A narrow instruction of § 12-27-1(11) to exclude the conduct IFS intends to undertake is both "reasonable and readily apparent," Sternberg, 530 U.S. at 944.

As to the Dataphase factors, first, jeopardizing a movant's First Amendment rights, "for even minimal periods of time," creates a threat of irreparable injury. Elrod v. Burns, 427 U.S. 347, 373 (1976). The First Amendment protects political speech, and significant encroachments on First Amendment rights through compelled disclosures such as what § 12-27-16 imposes "cannot .be justified by a mere showing of some legitimate governmental interest." Buckley v. Valeo, 424 U.S. 1, 64. (1976) (per curiam). IFS could still release its analysis and comply with the disclosure statements of course. But to compel IFS to make such disclosures as required by § 12-27-16 requires the statute to meet at least the "exacting scrutiny" standard set forth in Buckley. Id. at 64;

---

[5]If IFS prints its analysis and mails it in hard copy to South Dakota media, there may be printing, envelope and postage expense, but such expenses seem to be part of overhead and not the sort of mass mailing or media to which § 12-27-16 is directed and might not even exceed the $100 threshold in the statute. See SDCL § 12-27-16(1).

10

see also John Doe No. 1 v. Reed, 561 U.S. 186, 196 (2010). In short, an unlawful intrusion into IFS's First Amendment rights, if there is one here, creates irreparable injury. See Elrod, 427 U.S. at 373.

Second, the harm to Defendants from a limited preliminary injunction appears relatively minor. The Defendants initially do not believe that § 12-27-16 even applies to IFS's proposed analysis, so enjoining the Defendants from prosecuting IFS for such analysis seems to harm the Defendants little. Verily, the Defendants have a compelling and completely legitimate interest, and indeed a statutory duty, in enforcing South Dakota election laws. Thus, an overly broad injunction could harm the Defendants. See Maryland v. King, 567 U.S. 1301, 1301 (2012) ("[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.") (alterations in original) (citation omitted).

The parties at the hearing debated at length the third Dataphase factor of the probability of success on the merits, or given that IFS makes a constitutional challenge to a duly-enacted statute, whether IFS "is likely to prevail on the merits." Rounds, 530 F.3d at 732–33. As this Court explained above, § 12-27-16 applies only to an "independent communication expenditure" and neither the definition in § 12-27-1(11) nor the common understanding of "expenditure" extends to what IFS plans to do—release on its website and send to South Dakota media outlets its analysis of Amendment W and IM 24. Defendant's initial position was that § 12-27-16 does not extend to what IFS is doing, albeit based on their misinterpretation of the media exception in § 12-27-16(6)(a). IFS is likely to prevail on the merits of its claim that IFS has a First Amendment right to post its analysis to its website and send it to South Dakota media outlets without incurring criminal liability for foregoing the disclosures set forth in § 12-27-16. IFS appears to want a larger

victory here, seeking to have the disclosure requirements of § 12-27-16 declared unconstitutional, but this Court believes that its ruling need not be so broad or bold.

Finally, the public interest favors vindicating First Amendment freedoms. Pac. Frontier v. Pleasant Grove City, 414 F.3d 1221, 1237 (10th Cir. 2005); Carey v. Fed. Election Comm'n, 791 F. Supp. 2d 121, 136 (D.D.C. 2011) ("The public interest is supported by protecting the right to speak, both individually and collectively."). The public interest also favors enforcement of constitutionally valid election laws. See Am. Constitutional Law Found. v. Meyer, 120 F.3d 1092, 1099 (10th Cir. 1997) ("A state has a strong, often compelling, interest in preserving the integrity of its electoral system."); Republican Party of Pa. v. Cortes, 218 F. Supp. 3d 396, 412–413 (E.D. Pa. 2016). The public interest favors not stifling publications by entities interested in properly educating and informing voters of ballot measures, Citizens United v. Fed. Election Comm'n, 558 U.S. 310, 339–40 (2010), but also favors requiring disclosure of the source of that information and perhaps even the financiers on campaign literature or advertising so that voters can discern bias and detect manipulation, Ctr. for Individual Freedom v. Madigan, 697 F.3d 464, 477–78 (7th Cir. 2012); Cal. Pro-Life Council, Inc. v. Getman, 328 F.3d 1088, 1105–06 (9th Cir. 2003). The public interest disfavors convoluted statutory schemes designed to deter discussion and commentary on ballot measures. Utah Licensed Beverage Ass'n v. Leavitt, 256 F.3d 1061, 1076 (10th Cir. 2001). Here the public interest and the Dataphase factors when taken together seem to favor a narrowly crafted preliminary injunction to allow IFS to publish its commentary on its website and disseminate it by press release, which the Defendants initially deemed not to be violative of § 12-27-16.

**III.  Conclusion**

For the reasons explained, it is hereby

12

ORDERED that IFS's Motion for Temporary Restraining Order and Preliminary Injunction, Doc. 4, is granted in part and denied in part. The motion for a temporary restraining order is denied. The motion for a preliminary injunction is granted such that Defendants are enjoined from using SDCL § 12-27-16 to prosecute IFS for posting its analysis of Amendment W and IM 24 to its own website and issuing a press release of the analysis to South Dakota media outlets and that IFS is not bound to comply with § 12-27-16 so long as its analysis is what IFS has represented it to be.

DATED this 16th day of October, 2018.

BY THE COURT:

_____
ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE