UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| INSTITUTE FOR FREE SPEECH,<br><br>Plaintiff,<br><br>vs.<br><br>JASON RAVNSBORG, IN HIS OFFICIAL CAPACITY AS SOUTH DAKOTA ATTORNEY GENERAL; AND STEVE BARNETT, IN HIS OFFICIAL CAPACITY AS SOUTH DAKOTA SECRETARY OF STATE,<br><br>Defendants. | 3:18-CV-03017-RAL<br><br>OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFERRING RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

Plaintiff Institute for Free Speech (IFS) on October 8, 2018, filed a verified complaint against South Dakota's Attorney General and Secretary of State claiming that IFS wanted to publish on its website an analysis of two South Dakota ballot measures up for vote in 2018 and that two South Dakota statutes—SDCL §§ 12-27-1(11) and 12-27-16—impeded that publication and in turn violated IFS's rights under the First Amendment of the United States Constitution. Doc. 1. IFS sought a declaration that its conduct was not regulable under these statutes and that the statutes were unconstitutional. IFS on October 9, 2018, moved for a temporary restraining order and a preliminary injunction enjoining South Dakota from enforcing the statutes against it. Doc. 4. This Court coordinated with counsel for IFS and the Defendants to schedule and hold a hearing on October 12, 2018, on IFS's request for injunctive relief. Defendants took the position that the statutes did not apply to what IFS was proposing to do. Doc. 21 at 5. IFS represented that

1

its mission was defending the First Amendment and that "IFS's publication will not urge passage or defeat of either measure" and characterized its publications as "academic works." Doc. 1 at ¶¶ 2, 12, 18. On October 16, 2018, this Court issued an Opinion and Order Concerning Motion for Injunctive Relief granting IFS's motion for a preliminary injunction "such that Defendants are enjoined from using SDCL § 12-27-16 to prosecute IFS for posting its analysis [of the ballot measures] to its own website and issuing a press release of the analysis to South Dakota media outlets and that IFS is not bound to comply with § 12-27-16 so long as its analysis is what IFS represented it to be." Doc. 21 at 13.

Little did this Court realize at the time that IFS's principal goal was not to publish an "academic work" that "will not urge passage or defeat of either [ballot] measure," as IFS had represented. The day after this Court's grant of a preliminary injunction, IFS published an article on its website that described one of the ballot measures as "an outright ban on speech" and as being "as unconstitutional as it is unwise."[1] Doc. 44-1 at 2–3. IFS's publication described the other measure to "infringe on important First Amendment rights" and as creating "a recipe for a powerful but rudderless agency." Doc. 44-1 at 8, 11. Although IFS's publication did not expressly call for voters to vote against the ballot initiatives, a fair reading of the publication is that it was designed to advocate against the ballot measures, or to try to bring IFS's activity within SDCL § 12-27-16 to allow IFS to continue its challenge to that statute to this Court, or to do both.

IFS after the election filed an Amended Verified Complaint, again alleging that §§ 12-27-1(11) and 12-27-16 are unconstitutional. Doc. 27. Somewhat schizophrenically, Defendants' answer continued to maintain that IFS will not be prosecuted under SDCL § 12-27-16, Doc. 28 at

---

[1] Though beside the point as far as this decision, IFS may have predicted accurately on the constitutionality of one of the measures. See SD Voice v. Noem, 380 F. Supp. 3d 939 (D.S.D. 2019).

2

¶ 6, but also objected to IFS's characterization of its published analysis "as not urging passage or defeat" of the ballot measures because "[a] review of the analysis shows the publication to urge the defeat of those measures," Doc. 28 at ¶ 4. Defendants have instituted no enforcement action of any kind against IFS, and indeed this Court's preliminary injunction has remained in place.

IFS then filed a motion for judgment on the pleadings or alternatively for summary judgment, Doc. 32, and the Defendants filed a cross-motion for summary judgment, Doc. 48. This Court held oral argument to probe whether IFS has standing to make the challenge it raises and whether the statutory language with which IFS primarily takes issue—§ 12-27-16(1)(c)—even applies to IFS. Because IFS does not have standing at this time, this Court denies IFS's motion for summary judgment and defers ruling on Defendants' motion for summary judgment pending information on whether Defendants contest entry of a permanent injunction.

I. **Procedural History, Facts, and Claims**

IFS is a Virginia-headquartered 501(c)(3) entity which purports to be a nonpartisan, educational charity dedicated to defending the First Amendment rights of free speech and press. Doc. 1 at ¶ 12; Doc. 27 at ¶ 12; Doc. 44-1 at 2 n.7, 13. Since its founding in 2005, IFS, formerly known as the Center for Competitive Politics, Doc. 44-1 at 2 n.7, has focused its efforts on campaign finance and other compelled disclosure proposals and laws, Doc. 34 at ¶ 4; Doc. 43 at ¶ 4. IFS boasts in its publication on the South Dakota ballot measures of having "secured judgments in federal court striking down laws in Colorado, Utah, and South Dakota" and being "currently involved in litigation against California, Connecticut, Missouri, Massachusetts, Tennessee and the federal government." Doc. 44-1 at 2 n.7

3

This case began ostensibly because IFS wanted to publish an analysis of two measures on South Dakota's 2018 general election ballot—proposed Constitutional Amendment W[2] (Amendment W) and Initiated Measure 24[3] (IM 24). Doc. 1 at ¶ 6; Doc. 34 at ¶ 6; Doc. 43 at ¶ 6. IFS filed this suit in October 2018 claiming that it was concerned that its analysis would fall within South Dakota statutes regulating "independent communication expenditures." Doc. 1 at ¶ 6; Doc. 34 at ¶ 6; Doc. 43 at ¶ 6. One of the two statutes IFS claims to be unconstitutional is SDCL § 12-27-1-(11), which defines an independent communication expenditure as:

> an expenditure, including the payment of money or exchange of other valuable consideration or promise, made by a person, entity, or political committee for a communication concerning a candidate or a ballot question which is not made to, controlled by, coordinated with, requested by, or made upon consultation with that candidate, political committee, or agent of a candidate or political committee. The term does not include administration and solicitation of any contribution for a political action committee established by an entity and associated expenses, nor the use of an entity's real or personal property located on its business premises for such purposes. The term does not include any communication by a person made in the regular course and scope of the person's business or ministry or any communication made by a membership organization solely to any member of the organization and the member's family[.]

SDCL § 12-27-1(11). IFS contends § 12-27-11(1) is unconstitutionally vague in seeking to regulate campaign expenditures not associated with a candidate or political committee extending to communications "concerning a candidate or a ballot question."

The other statute IFS claims to be unconstitutional is SDCL § 12-27-16. Section 12-27-16 establishes disclaimer and disclosure requirements for communications funded by independent communication expenditures.[4] Section 12-27-16(1) contains the disclaimer requirements. IFS's

---

[2]Amendment W did not pass.
[3]IM 24 passed, but has been held to be unconstitutional. S.D. Voice, 380 F. Supp. 3d 939.
[4]In campaign finance parlance, a "disclosure" law is one that requires persons or groups to report information to a public agency. Citizens United v. FEC, 558 U.S. 310, 366 (2010); Majors v.

4

briefing makes clear that its constitutional challenge is to § 12-27-16(1)(c), requiring those making more than $100 in independent communication expenditures to disclose their top five contributors. Section 12-27-16(1) in its entirety provides:

> (1) Any person or entity that makes a payment or promise of payment totaling more than one hundred dollars,[5] including donated goods or services for an independent communication expenditure that concerns a candidate, public office holder, ballot question, or political party shall append to or include in each communication a disclaimer that clearly and forthrightly:
> (a) Identifies the person or entity making the independent communication expenditure for that communication;
> (b) States the mailing address and website address, if applicable, of the person or entity; and
> (c) If an independent expenditure is undertaken by an entity not including a candidate, public office holder, political party, or political committee, the following notation must be included: "Top Five Contributors," including a listing of the names of the five persons making the largest contributions in aggregate to the entity during the twelve months preceding that communication. An independent communication expenditure made by a person or entity shall include the following: "This communication is independently funded and not made in consultation with any candidate, public office holder, or political committee."

SDCL § 12-27-16(1). An initial violation of § 12-27-16(1) is a class 2 misdemeanor. Id. A second violation within a calendar year is a Class 1 misdemeanor. Id. Subsections (2) through (5) of § 12-27-16 contain the disclosure requirements, stating that persons or entities making a communication that falls within subdivision (1) must disclose certain information to the state. § 12-27-16(2)–(5).

---

Abell, 361 F.3d 349, 354 (7th Cir. 2004). A "disclaimer" law, on the other hand, requires that political communications include the identity of the speaker and perhaps other information. Citizens United, 558 U.S. at 366; Majors, 361 F.3d at 354.

[5]In its prior Opinion and Order Concerning Motion for Injunctive Relief, this Court questioned whether IFS's writing, posting, and disseminating its analysis would involve a payment of more than $100 or simply be part of the overhead of an entity ostensibly staffed to "research[] constitutional and practical implications of federal and state compelled disclosure laws." IFS apparently expended more than $100, and Defendants do not contest this fact. Doc. 27 at ¶ 24; see also Doc. 34 at ¶ 11; Doc. 43 at ¶ 11.

Section 12-27-16's disclosure and disclaimer requirements do not apply to all communications concerning a ballot question. The term "communication" does not include:

> (a) Any news article, editorial endorsement, opinion or commentary writing, or letter to the editor printed in a newspaper, magazine, flyer, pamphlet, or other periodical not owned or controlled by a candidate or political committee;
> (b) Any editorial endorsement or opinion aired by a broadcast facility not owned or controlled by a candidate or political committee;
> (c) Any communication by a person[6] made in the regular course and scope of the person's business or ministry or any communication made by a membership entity solely to members of the entity and the members' families;
> (d) Any communication that refers to any candidate only as part of the popular name of a bill or statute; and
> (e) Any communication used for the purpose of polling if the poll question does not expressly advocate for or against a candidate, public office holder, ballot question, or political party.

SDCL § 12-27-16(6). Defendants originally thought § 12-27-16(6)(a) to exempt IFS's proposed analysis, but Defendants' position was based on what appeared to be a misreading of that subsection.[7]

---

[6] The definition of "person" under § 12-27-1(16) means "a natural person," thereby excluding IFS.
[7] Section 12-27-16(6)(a) excludes from the term "communication" and thus from statutory criminal liability "[a]ny news article, editorial endorsement, opinion or commentary writing, or letter to the editor printed in a newspaper, magazine, flyer, pamphlet, or other periodical not owned or controlled by a candidate or political committee." Defendants previously suggested that there are two halves to § 12-27-16(6)(a) such that it could be read as exempting first "any news article, editorial endorsement, opinion or commentary writing" and second a "letter to the editor printed in a newspaper, magazine, flyer, pamphlet, or other periodical not owned or controlled by a candidate or political committee." Defendants' prior reading of § 12-27-16(6)(a) created nonsense to the second half of the provision; while a "letter to the editor printed in a newspaper, magazine" makes sense, "a letter to the editor printed in . . . [a] flyer, pamphlet . . ." makes no sense. § 12-27-16(6)(a). "Nonsensical interpretations of . . . statutes[] are disfavored." FutureSource LLC v. Reuters Ltd., 312 F.3d 281, 284 (7th Cir. 2002). Section 12-27-16(6)(a) properly read in full exempts a "news article, editorial endorsement, opinion or commentary writing, or letter to the editor" when such writings are "printed in a newspaper, magazine, flyer, pamphlet, or other periodical not owned or controlled by a candidate or political committee." IFS published what could be considered a "commentary writing" on its website and transmitted it to media outlets. Section 12-27-16(6)(a) is noticeably silent in protecting from criminal liability an "independent communication expenditure" on a website or electronic format or so transmitted to media outlets.

In an effort to establish standing to challenge the statutes, IFS alleges that it plans to run "substantially and materially similar" analyses of possible future South Dakota campaign finance ballot measures. Doc. 34 at ¶ 12; Doc. 43 at ¶ 12. Campaign finance ballot questions were before the South Dakota electorate in 2008, 2016, and 2018. Doc. 34 at ¶ 10; Doc. 43 at ¶ 10. However, the South Dakota Secretary of State's website, which both parties agreed was proper subject matter for judicial notice,[8] shows no ballot measures on the 2020 South Dakota ballot concerning campaign finance issues, and South Dakota law will change in 2020 in ways designed to make it more difficult to get such measures on the ballot. See H.B. 1094, 2019 Reg. Sess., 94th Leg. (S.D. 2019); S.D. Sec'y of State, Potential 2020 Ballot Questions, sdsos.gov/elections-voting/upcoming-elections/general-information/2020-ballot-questions.aspx (last visited Sept. 24, 2019). IFS nevertheless claims that campaign finance policy is a "perennial" issue in South Dakota and "likely" to be on the ballot for years to come. Doc. 34 at ¶ 10; Doc. 43 at ¶ 10.

Count One of IFS's amended complaint alleges that applying §§ 12-27-1(11) and 12-27-16 to analyses IFS might publish "to publicize its political views regarding South Dakota proposed ballot measures" would violate the First Amendment. Doc. 27 at ¶¶ 59, 87. Count Two asserts that § 12-27-1(11) should be declared facially void for vagueness.[9] Doc. 27 at ¶ 103. In the "prayers for relief" section of its amended complaint, IFS asks this Court to declare that its

---

Federal courts are "without power to adopt a narrowing construction of a state statute unless such a construction is reasonable and readily apparent." Boos v. Barry, 485 U.S. 312, 330 (1988)
[8] At oral argument and in response to this Court's inquiry, both IFS and Defendants agreed that this Court could take judicial notice of the content of the Secretary of State's website. This Court does so under Rule 201 of the Federal Rules of Evidence.
[9] Although the heading for Count II says that §§ 12-27-1(11) and 12-27-16 should both be declared vague, the substantive paragraphs of Count II only refer to § 12-27-1(11).

7

proposed future analyses are not regulable under §§ 12-27-1(11) and 12-27-16 and that § 12-27-1(11) is facially vague.[10] Doc. 27 at 20–21.

IFS has now moved for judgment on the pleadings or, in the alternative, summary judgment. Doc. 32. IFS argues that the disclaimer requirements in § 12-27-16(1)(c) violate the First Amendment and that 12-27-1(11)'s definition of "independent communication expenditure" is unconstitutionally vague. The State opposes IFS's motion, arguing that § 12-27-16(1) passes constitutional muster, that § 12-27-1(11) is sufficiently specific, and that IFS lacks standing to raise any claim. Doc. 41. The State has also filed a cross-motion for summary judgment raising these same arguments. Docs. 48, 49.

## II. Standard of Review

This Court will treat IFS's motion as one for summary judgment because both parties have filed statements of undisputed material facts and the State has filed a summary judgment motion of its own. Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On summary judgment, the evidence is "viewed in the light most favorable to the nonmoving party." True v. Nebraska, 612 F.3d 676, 679 (8th Cir. 2010) (quoting Cordry v. Vanderbilt Mortg. & Fin., Inc., 445 F.3d 1106, 1109 (8th Cir. 2006)). There is a genuine issue of material fact if a "reasonable jury [could] return a verdict for either party" on a particular issue. Mayer v. Countrywide Home Loans, 647 F.3d 789, 791 (8th Cir. 2011). A party opposing a properly made and supported motion for summary judgment must cite to particular materials in the record supporting the assertion that a fact is

---

[10]The "prayers for relief" section also asks this Court to declare that §§ 12-27-1(11) and 12-27-16 are unconstitutional as applied to IFS's analysis of Amendment W and IM 24.

8

genuinely disputed. Fed. R. Civ. P. 56(c)(1); Gacek v. Owens & Minor Distrib., Inc., 666 F.3d 1142, 1145 (8th Cir. 2012). "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." Thomas v. Corwin, 483 F.3d 516, 527 (8th Cir. 2007); see also Reasonover v. St. Louis Cty., 447 F.3d 569, 578 (8th Cir. 2006) ("Evidence, not contentions, avoids summary judgment.") (quoting Mayer v. Nextel W. Corp., 318 F.3d 803, 809 (8th Cir. 2003)). Summary judgment is not "a disfavored procedural shortcut, but rather . . . an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

## III. Justiciability Analysis

### A. Standing and Ripeness Requirement

"Article III of the Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies.'" Clapper v. Amnesty Int'l USA, 568 U.S. 398, 408 (2013). Courts implement this limit through different justiciability doctrines, including standing and ripeness. DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 352 (2006). Broadly speaking, the standing inquiry concerns whether the plaintiff is the appropriate party to bring a particular suit. Raines v Byrd, 521 U.S. 811, 818 (1997); Flast v. Cohen, 392 U.S. 83, 99–100 (1968). The three requirements for standing are: (1) an injury in fact; (2) a causal connection between the injury and the law being challenged; and (3) a likelihood that a favorable decision will redress the injury. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 102–03 (1998). Ripeness, on the other hand, concerns whether a claim is being brought at the proper time. See Vogel v. Foth & Van Dyke Assocs., 266 F.3d 838, 840 (8th Cir. 2001). Claims are not ripe when they rest on "contingent future events that may not occur as anticipated, or indeed may not occur at all." Texas v. United States, 523 U.S.

296, 300 (1998) (citation and internal marks omitted). Ripeness often overlaps with the injury-in-fact requirement of standing, particularly when plaintiffs challenge a statute that has yet to be enforced against them. Susan B. Anthony List v. Driehaus, 573 U.S. 149, 157 n.5 (2014) (stating that the issues of injury in fact and ripeness "boil[ed] down to the same question" in the preenforcement challenge before the Court (citation omitted)); Dermer v. Miami-Dade Cty., 599 F.3d 1217, 1220 (11th Cir. 2010); see also Johnson v. Missouri, 142 F.3d 1087, 1090 n.4 (8th Cir. 1998) (explaining that the doctrines of ripeness and standing "are closely related in that each focuses on whether the harm asserted has matured sufficiently to warrant judicial intervention." (cleaned up and citation omitted)).

The issue here is whether IFS has "an injury in fact" or instead a claim resting on "contingent future events that may or may not occur as anticipated, or indeed may not occur at all." See Steel Co., 523 U.S. at 102–03; Texas, 523 U.S. at 300. To satisfy Article III standing, the injury "must be concrete and particularized and actual or imminent, not conjectural or hypothetical." Susan B. Anthony List, 573 U.S. at 158 (cleaned up and citation omitted). "An allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." Id. (cleaned up and citation omitted). The Supreme Court has explained that a plaintiff bringing a First Amendment challenge can meet the injury-in-fact requirement by showing "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder."[11] Id. at 159 (citation omitted).

---

[11] A plaintiff in a First Amendment challenge can also establish an injury in fact by alleging that it censored itself because of a statute. Missourians for Fiscal Accountability v. Klahr, 830 F.3d 789, 794 (8th Cir. 2016). IFS in its amended complaint has neither alleged that it has engaged in self-censure nor claimed that there are currently-pending campaign finance measures about which it wishes to comment.

10

## B. Standing Based on IFS Publication After Entry of Preliminary Injunction

Though IFS discussed standing only cursorily in its briefing, it argued during the hearing that it has standing in two different ways. First, IFS pointed to standing based on the nebulous stance of Defendants during the hearing and in pleadings about whether IFS's past publication on the two ballot measures contravened SDCL § 12-27-16. As a general rule, however, courts determine standing based on the facts that existed when the plaintiff commenced the suit. Park v. Forest Serv. of U.S., 205 F.3d 1034, 1037–38 (8th Cir. 2000) (holding that the defendant's use of illegal checkpoints after the complaint was filed was irrelevant to whether the plaintiff could show that she faced a real and immediate threat of an illegal checkpoint at the time of filing); 13A Charles Alan Wright et al., Federal Practice and Procedure § 3531 (3d ed. Updated August 2019) ("Post-filing events that supply standing that did not exist on filing may be disregarded, denying standing despite a showing of sufficient present injury caused by the challenged acts and capable of judicial redress."). Here, Defendants' statements on whether § 12-27-16 applied to IFS's analysis did not occur until after IFS commenced this suit and filed its amended complaint.

Even though this asserted ground for standing could be disregarded as developing after the case was filed, this Court chooses to address this standing argument further. To be clear, as this Court previously reasoned, Defendants' choice not at this time to enforce SDCL § 12-27-16 against IFS does not necessarily dispose of IFS's challenge. State defendants may change their minds about enforcing a statute or may be replaced by the electorate, and the state Defendants are not bound, by estoppel or otherwise, to their present decision to forego prosecuting IFS. See Vt. Right to Life Comm., Inc. v. Sorrell, 221 F.3d 376, 383–84 (2d Cir. 2000); Kucharek v. Hanaway, 902 F.2d 513, 519 (7th Cir. 1990). To hold otherwise potentially risks putting asserted First Amendment rights "at the sufferance of" state officials. N.C. Right to Life, Inc. v. Bartlett, 168

11

F.3d 705, 711 (4th Cir. 1999); see also Sorrell, 221 F.3d at 383. Yet there can be instances where the risk of prosecution is so remote that no standing and no ripe claim exists. See Harmon v. City of Kan. City, 197 F.3d 321, 327 (8th Cir. 1999) (holding that plaintiffs bringing a First Amendment challenge lost standing to seek injunctive relief when the city admitted that the plaintiffs' conduct was constitutionally protected and was not prohibited by the challenged statute); Wis. Right to Life, Inc. v. Paradise, 138 F.3d 1183, 1185 (7th Cir. 1998) (finding no well-founded fear to justify standing when every attorney general since 1976 had adhered to same interpretation of challenged state statute); Graham v. Butterworth, 5 F.3d 496, 499 (11th Cir. 1993) (dismissing First Amendment challenge to state statute as moot when defendants withdrew determination that plaintiff's conduct violated statute and advised plaintiff that his conduct would not be prosecuted).

IFS's argument for standing based on possible prosecution under § 12-27-16 for its published analysis, however, does not account for the fact that this Court has entered a preliminary injunction enjoining Defendants "from using SDCL § 12-27-16 to prosecute IFS for posting its analysis [of the two ballot measures] to its own website and issuing a press release of the analysis to South Dakota media outlets." Doc. 21 at 13. Thus, IFS is not at "the sufferance of" state officials in their decision to prosecute or not prosecute IFS. This Court has preliminarily enjoined state officials from any such prosecution. Even if IFS were to argue that it may have exposed itself, whether deliberately or not, to prosecution by overstepping what it represented it would publish and thus be outside of the protection of this Court's injunction, the Defendants have not sought any relief from the injunction in the 11 months since IFS published its analysis, and Defendants ultimately represented during the hearing that they do not intend to prosecute IFS for

12

publishing the analysis.[12] And, as the parties heard from this Court during the hearing, this Court believes there to be a factual question about what IFS is and what it is doing that determines whether IFS is even covered by § 12-27-16(1)(c), the portion of the statute IFS challenges as unconstitutional.

To explain the issue of whether IFS is even covered by § 12-27-16(1)(c) and what the fact questions about IFS's operations are, this Court needs to discuss the statutory language that IFS challenges. The portion of § 12-27-16(1)(c) challenged by IFS states:

> If an independent expenditure is undertaken by an entity not including a candidate, public office holder, political party, or political committee, the following notation must be included: "Top Five Contributors," including a listing of the names of the five persons making the largest _contributions_ in aggregate to the entity during the twelve months preceding that communication.

SDCL § 12-27-16(1)(c) (emphasis added). Although IFS complied with § 12-27-16(1)(a) and (b) in its analysis, it did not list its top five "contributors." The word "contributions" in § 12-27-16(1)(c) is a defined term in the statutory scheme and may not even extend to those who contribute to IFS. The word "contribution," with the most pertinent language to this case emphasized, is defined in § 12-27-1 as:

> (6) "Contribution," any gift, advance, distribution, deposit, or payment of money or any other valuable consideration, or any contract, promise or agreement to do so; any discount or rebate not available to the general public; any forgiveness of indebtedness or payment of indebtedness by another person; or any use of services or property without full payment or that is provided by any person or political committee whose primary business is to provide services or property, _made for the purpose of influencing_:
> ....
> (b) The placement of a ballot question on the ballot or _the adoption or defeat of any ballot question submitted._

---

[12]Towards the end of the hearing, Defendants said that they have no desire to go back and prosecute IFS for its published analysis.

SDCL § 12-27-1(6) (emphasis added). Under South Dakota law, courts are "not free to disregard legislative definitions of words." N. Border Pipeline Co. v. S.D. Dep't of Revenue, 868 N.W.2d 580, 584 n.9 (S.D. 2015); see also Behlmann v. Century Sur. Co., 794 F.3d 960, 963 (8th Cir. 2015) (explaining that federal courts apply state rules of statutory construction when interpreting state statutes). Indeed, "whenever the meaning of a word or phrase is defined in any statute such definition is applicable to the same word or phrase wherever it occurs, except where a contrary intention plainly appears." N. Border Pipeline Co., 868 N.W.2d at 584 n.9 (citation omitted); see also SDCL § 2-14-6 ("Words used in the singular number include the plural, and the plural, the singular, except where a contrary intention plainly appears"). The South Dakota Legislature has not plainly indicated that the definition of "contribution" in § 12-27-1 is inapplicable to § 12-27-16(1)(c). In fact, the introductory clause of § 12-27-1 suggests that the definition of "contribution" applies throughout Chapter 12-27. SDCL § 12-27-1 (stating that "[t]erms used in this chapter mean"); N. Border Pipeline Co., 868 N.W.2d at 584 n.9 (concluding that a very similar introductory clause "direct[ed]" that the terms defined in that section applied throughout the chapter). By its text, then, § 12-27-1(6)(b) applies to IFS only if IFS receives a "contribution . . . made for the purpose of influencing . . . the adoption or defeat of any ballot question submitted."

IFS has represented itself to this Court as follows:

> Plaintiff IFS is a § 501(c)(3) nonpartisan, educational charity dedicated to the defense of the political speech and press rights protected by the First Amendment. As part of that mission, IFS researches constitutional and practical implications of federal and state compelled disclosure laws, especially in the area of campaign finance regulation. Additionally, IFS represents individuals and civil society organizations, pro bono, in cases raising First Amendment objections to burdensome regulation of core political speech.

Doc. 1 at ¶ 12; Doc. 27 at ¶ 12; Doc. 33 at 3; Doc. 34 at ¶ 1. If that is how IFS has represented itself to its contributors, then any contribution to IFS is likely not "made for the purpose of influencing . . . the adoption or defeat of any ballot question submitted." See SDCL § 12-27-1(6).

Strangely, IFS did not like this reading of the statute, even though it would appear to take IFS (if it indeed is what it purports to be) outside of the statute and any ability of Defendants to prosecute it under § 12-27-16(1)(c) for not disclosing information about its contributors. Equally strangely, despite having repeatedly cited to its website throughout its court filings, Doc. 1 at ¶ 18; Doc. 27 at ¶ 18; Doc. 33 at 4–5; Doc. 34 at ¶ 5, IFS at oral argument balked at the Court taking judicial notice of (or even viewing) its website in determining whether contributors to IFS are even arguably within the statutory definition of SDCL § 12-27-1(6). IFS expressed at oral argument that it solicits contributions through separate mailings and communications and through certain solicitations and activities of its board of directors, but then bristled at the suggestion of possible discovery of such communications as to whether the statute would apply to IFS. IFS evidently wants the statute to apply to it, regardless of the statutory language or IFS's business or activities, but that desire alone is insufficient to justify standing.

In short, any concern about Defendants enforcing SDCL § 12-27-16 against IFS for what IFS published does not involve a credible threat of prosecution or subject IFS's First Amendment rights to the sufferance of the Defendants. Defendants are enjoined from any enforcement action against IFS by this Court's order, have not sought to have this Court alter this order, have not attempted any enforcement action, and know from this Opinion and Order that this Court remains skeptical and would have to be convinced, perhaps after discovery is allowed, that IFS has "contributors" within the compass of § 12-27-1(6) to even render § 12-27-16(1)(c) applicable to IFS.

15

## C. Standing Based on Possible Future IFS Publications

IFS's second argument for standing, consistent with its amended complaint, is that campaign finance proposals are likely to be on the ballot in South Dakota for "years to come," that it will run analyses of "future South Dakota campaign finance ballot measures," and that it won't be able to publish these analyses without "imminent fear of prosecution" under § 12-27-16. Doc. 34 at ¶¶ 10, 12, 14. The best evidence that a campaign finance measure will be on the ballot in the future is that such proposals were before the South Dakota electorate in 2008, 2016, and 2018. Doc. 43 at ¶ 10. The State disagrees with IFS's allegations, asserting that it is speculative whether South Dakota will have another campaign finance measure to which IFS will provide commentary. Doc. 43 at ¶¶ 10, 12, 14. The South Dakota Secretary of State's website shows that there are no campaign finance proposals currently slated to be on the South Dakota ballot in 2020, and, as mentioned above, South Dakota has made statutory changes to make such initiatives more difficult to get on the ballot.

This Court must determine whether IFS's alleged injury is "certainly impending" or there is a "substantial risk" that the injury will occur. Dep't of Commerce v. New York, 139 S. Ct. 2551, 2565 (2019) (quoting Susan B. Anthony List, 573 U.S. at 158). After all, IFS will not publish any analysis *unless* a campaign finance proposal appears on the South Dakota ballot.

The Supreme Court has decided several cases concerning when the threatened enforcement of a statute establishes an Article III injury. None of these cases are exactly on point, but they provide some guideposts for determining whether the injury IFS alleges is sufficiently imminent. In Steffel v. Thompson, 415 U.S. 452 (1974), for instance, the Supreme Court found an "actual controversy" when the plaintiff was twice warned to stop handbilling and was threatened with prosecution if he refused, he planned to continue his activity, and his handbilling companion was

16

prosecuted. Id. at 459. The plaintiff in Steffel had been handbilling against the Vietnam War. Although finding an "actual controversy," the Supreme Court remanded the case to the district court to determine whether the controversy remained live after the United States reduced its involvement in the war. Id. at 459–60.

Similarly, the Supreme Court in Babbitt v. United Farm Workers National Union, 442 U.S. 289 (1979), held that the plaintiffs had standing to challenge a statute that prohibited the use of "dishonest, untruthful, and deceptive publicity." Id. at 301. Although the plaintiffs didn't plan to publish anything deceptive, they claimed that "erroneous statement is inevitable in free debate." Id. (citation omitted). The plaintiffs also showed that they had participated in past consumer publicity campaigns and claimed that they intended to continue those campaigns in the future. Id. That record—along with the state's failure to disavow an intention to invoke the statute's criminal penalties against the plaintiffs—convinced the Supreme Court that the threat of prosecution was not "imaginary or wholly speculative." Id. at 302.

Relying on Babbitt, the Supreme Court in Holder v. Humanitarian Law Project, 561 U.S. 1 (2010), held that the plaintiffs could bring a preenforcement challenge to a statute that outlawed knowing support of a foreign terrorist organization. Id. at 15–16. The plaintiffs had provided support to groups classified as terrorist organizations before the statute was enacted and claimed that they would provide similar support if the statute were struck down. Id. The government had charged 150 persons with violating the statute and did not claim that the plaintiffs would be safe from prosecution if they resumed their support of the organizations. Id. at 16. These considerations, the Court explained, established a "credible threat of prosecution." Id. at 15–16.

Most recently, the Supreme Court in Susan B. Anthony List considered preenforcement challenges to an Ohio statute that criminalized false statements concerning a political candidate.

17

573 U.S. at 161. The statute allowed anyone to complain to the Ohio Election Commission, which would then refer the complaint to a prosecutor if it found a violation. Id. at 152–53. One of the plaintiffs, Susan B. Anthony List, had issued a press release saying that a candidate supported taxpayer funded abortion by voting for the Affordable Care Act (ACA). Id. at 153–54. The candidate filed a complaint over the statement being false, after which the Ohio Election Commission found probable cause and scheduled a hearing before the whole Commission. Id. at 154. The candidate withdrew his complaint because he lost the election. Id. at 155. The other plaintiff in Susan B. Anthony List alleged that it wanted to make similar statements about the candidate's vote for the ACA but refrained from doing so because of what happened to Susan B. Anthony List. Id. at 156. The Supreme Court held that the plaintiffs faced a credible threat of enforcement: both plaintiffs pleaded "specific" future statements they intended to make about candidates who voted for the ACA; the Ohio Statute "arguably" covered the plaintiffs' intended activity; there was a history of past enforcement; and Ohio had not "disavowed" enforcement if the plaintiffs made similar statements in the future. Id. at 161–65. And while the candidate the plaintiffs wanted to attack had lost the election, the Court found that the case remained justiciable because the plaintiffs wanted to issue statements about the broader issue of support for the ACA. Id. at 163.

The Supreme Court has found jurisdiction lacking in at least one preenforcement challenge, however. Golden v. Zwickler, 394 U.S. 103 (1969). The plaintiff in Golden challenged a New York law that outlawed the distribution of anonymous leaflets pertaining to election campaigns. Id. at 104–05. The plaintiff had been convicted under the law for distributing anonymous leaflets focusing on a particular candidate running for election in 1964. Id. at 105–06. The plaintiff challenged the law after the 1964 election, claiming that the candidate would run again in 1966 and that the plaintiff intended to continue distributing anonymous literature about the candidate.

Id. at 106. After the plaintiff filed his complaint, the candidate left Congress for a position with the New York judiciary. Id. The Supreme Court found that the controversy was not justiciable because it was "most unlikely" that the candidate would be running again. Id. at 109. The prospect of a campaign involving the candidate was neither "real nor immediate," the Court explained, so it was "wholly conjectural that another occasion might arise" where the plaintiff would be prosecuted for distributing leaflets about the candidate. Id.

This Case does not involve a threat of prosecution as clear as in Steffel, Babbitt, or Holder and falls in between the facts of Susan B. Anthony List and Golden. Unlike in Susan B. Anthony List, South Dakota has no history to date of enforcing SDCL § 12-27-16(1)(c) and future South Dakota ballot initiatives on campaign finance measures are far less certain to occur than Ohio candidates who support the ACA. Unlike in Golden, future South Dakota ballot measures on campaign finance restrictions are more possible than it was for the candidate in Golden who became a judge to run for elected office again.

There is an additional factor in this case that separates IFS's situation from that of the plaintiffs in Steffel, Babbitt, Holder, and Susan B. Anthony List: IFS may well not be required to make the disclosure under § 12-27-16(1)(c) for the reasons explained above. That is, IFS may be attempting to challenge as unconstitutional a statutory provision that does not apply to IFS, depending on the true nature of IFS's business and what it communicated to solicit contributors and contributions.

This Court concludes that IFS has not at this point sustained "an injury in fact." Whether there is a future South Dakota ballot measure implicating IFS's concerns about campaign finance restrictions is uncertain and subject to conjecture. Whether § 12-27-16(1)(c) even applies to IFS prevents this Court from concluding that the South Dakota ballot measure analysis posted to IFS's

19

website and shared with South Dakota media outlets is "proscribed by the statute" or, given this Court's reading of § 12-27-16(1)(c), exposes IFS to a "credible threat of prosecution thereunder." Susan B. Anthony List, 573 U.S. at 159.

Because of IFS's lack of standing and because of related ripeness concerns, this Court denies IFS's motion for judgment on the pleadings or summary judgment. This Court withholds granting Defendants' motion for summary judgment until and unless Defendants file a definitive statement with this Court that they agree the preliminary injunction can be made permanent with regard to IFS's prior published analysis on IM 24 and Amendment W. If Defendants instead wish to contest whether IFS's analysis is covered by §§ 12-27-1(6) and 12-27-16 and conduct discovery on the subject of whether IFS collects "contributions" under § 12-27-1(6), Defendants shall so notify this Court within 21 days hereof.

## IV. Order

Therefore, it is

ORDERED that IFS's motion for judgment on the pleadings or alternatively for summary judgment, Doc. 32, is denied. It is further

ORDERED that ruling on Defendants' motion for summary judgment, Doc. 48, is deferred at this time pending notification of whether Defendants resist entry of a permanent injunction against enforcing § 12-27-16 as to IFS's published analysis on IM 24 and Amendment W.

DATED this 26th day of September, 2019.

BY THE COURT:

_____
ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE